1  **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
2  Julia K. Venditti (State Bar No. 332688)
3  Joshua B. Glatt (State Bar No. 354064)
   1990 North California Blvd., 9th Floor
4  Walnut Creek, CA 94596
   Telephone: (925) 300-4455
5  Facsimile: (925) 407-2700
   E-mail: ltfisher@bursor.com
6          jvenditti@bursor.com
7          jglatt@bursor.com

8  *Attorneys for Plaintiff*

9

10                    **UNITED STATES DISTRICT COURT**

11                    **NORTHERN DISTRICT OF CALIFORNIA**

12

13 | CODY CONNOLLY, individually and on behalf of all others similarly situated, | Case No. |
14 | | |
   | Plaintiff, | **CLASS ACTION COMPLAINT** |
15 | v. | |
16 | | <u>JURY TRIAL DEMANDED</u> |
   | MYBOOKIE, INC., | |
17 | | |
18 | Defendant. | |

19

20

21

22

23

24

25

26

27

28

Plaintiff Cody Connolly ("Plaintiff") brings this action on behalf of himself and all others similarly situated against MyBookie, Inc. ("Defendant"). Plaintiff makes the following allegations based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. (the "TCPA").

2. Defendant owns, operates, and runs an online sports betting platform: Mybookie.ag. To promote its goods and services, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendants' unlawful conduct, which has resulted in the intrusion upon seclusion, invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and the Class members. Plaintiff also seeks statutory damages on behalf of himself and the members of the Class, and any other available legal or equitable remedies.

**PARTIES**

4. Plaintiff Cody Connolly is a citizen of California and resident of Walnut Creek, California.

5. Defendant MyBookie, Inc., is a registered domestic corporation in Delaware with its headquarters in 7 Abraham de Veerstraat, Willemstad, Curaçao CW Netherlands Antilles.

6. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

**JURISDICTION AND VENUE**

7. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

8. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized text messaging scheme was directed by Defendant to consumers in this District.  Additionally, Plaintiff's telephone number has an area code that specifically coincides with his city of residency in California.

### FACTUAL ALLEGATIONS

**A.    Background On The TCPA**

9. Plaintiff brings this case to protect his privacy rights; namely, the right to be left alone from unwanted telemarking communications.

10. Plaintiff brings this suit in an effort to stop companies, like Defendant, from sending text messages to his and putative class members' phones after they had expressly required that Defendant cease from doing so.

11. When companies, like Defendant, receive a request to stop sending text messages to a recipient of such messages, such companies have an obligation to place the person making the stop request on the company's internal do-not-call list, and to no longer send text messages to the person.

12. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications.  A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization."  137 Cong. Rec. 30821 (1991).

13. The TCPA affords special protection for people who request to be placed on a company's internal do not call list. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.  47 U.S.C. § 227(c)(5).

14. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Plaintiff, frequently face.  A 2023 tally from the previous year

found that 415,172,654 spam texts per day.[1] In California, approximately 1,315,688,592 texts in *just* September 2023.[2]

15.     The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount.[3]

**B.     Plaintiff and Class Members Received Numerous Text Messages Despite Requesting To Defendant Stop**

16.     Defendant operates the online betting platform MyBookie.ag. As with any sports gambling platform, it necessarily needs consumers to place—and lose—those bets to generate revenue. Accordingly, when consumers open an account but never actually place a bet—like Plaintiff did here—Defendant aggressively seeks their renewed interest in its platform.

17.     Plaintiff is one such person who received repeated text messages despite following Defendant's own instructions to be removed from the text message lists.

18.     On or about September 7, 2023, Plaintiff requested to opt-out of Defendant's text messages by replying with "STOP" to unsubscribe as reflected by the following screenshot in Figure 1:

---

[1] Kaitlyn Orred, *2023 Spam Text Statistics: Are Spam Texts On The Rise?* TEXT-EM-ALL (Oct. 19, 2023) *available* https://www.text-em-all.com/blog/spam-text-statistics.

[2] *Id.*

[3] Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790.* Wall Street J. (Mar. 28, 2019) *available* https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.



**Figure 1**

[SPACE INTENTIONALLY LEFT BLANK]

19. Defendant entirely ignored Plaintiff's request; it never stopped bombarding Plaintiff with texts as recently as March and June 2025:



**Figure 2**

20. Defendant sent Plaintiff at least (10) ten marketing text messages after Plaintiff's initial "STOP" request. Defendant even acknowledged that Plaintiff had requested the texts stop but continued to send them.

21. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods, services, and/or properties and advertise its platform.

22. Defendant did not honor Plaintiff's requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations three different times by telling Defendant not to contact him. Defendant continued to send message Plaintiff.

23. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

24. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant either does not maintain a standalone do-not-call list or—perhaps worse—has one but elects to ignore it entirely. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

25. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made repeated opt-out requests and those requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages.

26. Plaintiff is the regular user of the telephone number that received the above text message solicitations.

27. Plaintiff utilizes the cellular telephone that received Defendant's texts messages for personal purposes. The number is Plaintiff's residential cellular telephone line.

28. As the entity response for drafting the language of—and selected recipients for—each text message, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports likely show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

29. Defendant's text messages caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## **CLASS ALLEGATIONS**

30. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

31. Plaintiff brings this case on behalf of the Class defined as follows:

> All persons within the United States who, within the four years prior to the filing of this lawsuit, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding Defendant's goods, services, or properties, to said person's residential cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages by replying with "stop" or similar opt-out instruction to each text message.

32. Plaintiff reserves the right to modify the Class definition as warranted as facts are learned in further investigation and discovery.

33. Excluded from the Class are (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel. Defendant and its employees or agents are excluded from the Class.

34. ***Numerosity.*** While the exact number of members of the Class is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Class is greater than 40. Members of the Class may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

35. ***Existence and Predominance of Common Questions of Law and Fact:*** There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

    a. Whether Defendant sent text messages to Plaintiff and the Class members;

b. Whether Defendant continued to send text message solicitations after opt-out requests;

c. Whether Defendant failed to honor Plaintiff's and the Class members' opt-out requests;

d. Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;

e. Whether Defendant maintains the required policies and procedures under section 64.1200; and

f. Whether Defendant is liable for damages, and the amount of such damages.

36. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

37. **_Typicality._** Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories as each member of the Class received Defendant's solicitation text message, replied with "STOP," and continued receiving text messages.

38. **_Adequacy._** Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class because he has no interests adverse to the interest of the Members of the Class. Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

39. **_Superiority._** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely substantial, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate

claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

40. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the Class)

41. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

42. Plaintiff brings this claim individually and on behalf of the Class against Defendant.

43. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscribers name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

44. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

45. Plaintiff and the Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

46. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

47. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "STOP" or similar opt-out instructions.

48. Defendant continued to send text messages to Plaintiff and the Class Members to harass them into using Defendant's platform.

49. Defendant failed to honor Plaintiff's and the Class members' opt-out requests.

50. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and/or use it.

51. Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages or otherwise complying with the requirements for maintaining and following such a list.

52. Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list and properly abiding by it.

53. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

54. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

55. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages for each and every negligent violation.

56. As a result of Defendant's knowing or willful conduct, Plaintiff and the Class members are entitled to an award of $1,500.00 in statutory damages per violation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Class as applicable under the TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to comply with the statute;

e) For an award of punitive damages for Defendant's willful and repeated violations; and

f) Such further and other relief as the Court deems necessary.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: August 7, 2025                    **BURSOR & FISHER, P.A.**

By: /s/ *L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         jvenditti@bursor.com
         jglatt@bursor.com

*Attorneys for Plaintiff*